BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1910.

JAMES HALES, Respondent, v. DR. ONEY C. RAINES, Appellant.

Springfield Court of Appeals, June 6, 1910.

1. PHYSICIANS AND SURGEONS: Malpractice: Negligent Treatment by X-Rays: Sufficiency of Evidence. In a suit by a patient against a physician for negligent treatment of the plaintiff's hand which was afflicted with eczema, the treatment being the application of the X-Ray to the hand, the evidence is examined and held sufficient to go to the jury on the question of defendant's negligence in exposing the hand too near the electric rays and for periods of too great a length.

2. ———: ———: Torts: Physician's Liability when Contract for Treatment is with Hospital Association. In a suit against a physician for negligent treatment of plaintiff's hand by the X-Ray process where the action is in tort and not on the contract of employment, the fact that the contract for treatment was made with the hospital association of which defendant was a physician, is not material.

3. ———: Duty to Patient. A physician and surgeon, when employed in his professional capacity, is required to exercise that degree of knowledge and skill and care which physicians and surgeons practicing in similar localities ordinarily possess.

4. INSTRUCTIONS: Physicians and Surgeons: Malpractice: Measure of Damages. In a suit for damages against a physician on account of negligent treatment of the plaintiff's hand an instruction given on the measure of damages is approved. The evidence showed that the injury was permanent, and it is also held that the court properly submitted the question of future damages to the jury.

146 App.]                    ( 232 )

Hales v. Raines.

5. ———: ———: ———: **Duty to Patient.** In a suit by a patient for damages for injuries received through the negligent treatment by his physician, the instructions on the degree of care and skill which the physician was required to exercise in the treatment of the patient's affliction is examined and when read together are held to correctly declare the law.

6. ———: **Instructions: Duty to Request.** When a party litigant is of the opinion that the jury should have more specific instructions on an issue submitted to them, it is his duty to request the court to give the same.

7. **VERDICT: Foreman Signing in Two Places: Practice.** In a suit for damages the defendant filed a counterclaim. The court instructed the jury to find for plaintiff on the counterclaim. The jury in returning its verdict had the foreman sign in two places; once under that part of the verdict finding for the plaintiff on his cause of action, and again under that part of the verdict finding for the plaintiff on defendant's counterclaim. *Held,* that this was not material error.

8. **MALICIOUS PROSECUTION: Counterclaim: Probable Cause Settled by Jury's Finding.** A patient instituted a suit against a physician for damages for malpractice. On a trial of the case plaintiff was forced to take a nonsuit. The suit was reinstituted and plaintiff obtained judgment. In the second suit defendant filed a counterclaim for damages for malicious prosecution growing out of the first action. The court gave a peremptory instruction for the plaintiff on the counterclaim. *Held,* that the defendant was in no position to complain of the court's action; that the jury's verdict for plaintiff for damages for the malpractice settled the question of malicious prosecution of the first suit.

9. **PLEADING: Malpractice: Sufficiency of Petition.** The petition in a suit against a physician for malpractice is held sufficient in this cause, especially when not attacked by demurrer.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

AFFIRMED.

*Richard F. Ralph, P. H. Cullen, Thomas T. Fauntleroy* and *Shepard Barclay* for appellant.

(1) The trial court erred in excluding the counterclaim, because an action lies for malicious prosecution

of a civil action. Cooper v. Scyoc, 104 Mo. App. 414; Brady v. Erwin, 48 Mo. 533; Boogher v. Life Assn., 75 Mo. 319. (2) The instruction excluding the counterclaim was erroneous under the decisions holding that where the court, at close of plaintiff's case (or State's case in a criminal prosecution), declares the law to be that plaintiff cannot recover, and thereupon plaintiff dismisses or takes a nonsuit, a prima-facie case of want of probable cause and of malice is thereby made out. McGarry v. Railroad, 36 Mo. App. 347; Sharpe v. Johnston, 59 Mo. 577; Hurgren v. Insurance Co., 141 Cal. 585; Sappington v. Watson, 50 Mo. 83; Fugate v. Miller, 109 Mo. 289. (3) The court erred in excluding the testimony that plaintiff's contract was with the association. If an action for malpractice is founded on contract (as here) it must be so proved as alleged. Lane v. Boicourt, 128 Ind. 420; Dashiell v. Griffith, 84 Md. 363. (4) Where a contract is alleged, plaintiff must prove same and cannot recover on another theory. Eyerman v. Assn., 61 Mo. 489; Mooney v. Kennett, 19 Mo. 551; Green v. Cole, 127 Mo. 587; Clements v. Yeates, 69 Mo. 625; Laclede Co. v. Tudor Works, 169 Mo. 137. (5) The court erred in not instructing for a verdict for defendant. Carroll v. Railroad, 107 Mo. 653. (6) The two instructions, both of which authorized verdicts "for plaintiff in a sum not to exceed $10,000," without stating elements of damage, are erroneous, as giving a "roving commission" to the jury without any guide as to the recoverable claims for damage in the petition. Hawes v. Stockyards Co., 103 Mo. 60; Badgley v. City, 149 Mo. 134. (7) Taking two verdicts was error as assigned in the motion in arrest. Kreibohm v. Yancey, 154 Mo. 82; Cattell v. Pub. Co., 88 Mo. 356.

*Joseph F. Coyle* and *Morrow & Kelley* for respondent.

(1) This is an action for malpractice. The petition contains every allegation necessary to state a cause

of action founded on this tort. Wheeler v. Bowles, 163 Mo. 402; 30 Cyc. 1583; 16 Enc. Plead. and Prac., p. 528. (2) There was only one course open to the trial court in the face of the overwhelming volume of competent evidence introduced in this case as shown by the record, and that was to submit the case to the jury. Every allegation of the petition is supported by substantial evidence. Meily v. Railroad, 215 Mo. 586; Crossett v. Ferrill, 209 Mo. 707; Barth v. Railroad, 142 Mo. 549; Pitthan v. Schaithman, 127 Mo. App. 33; McManus v. Railroad, 118 Mo. App. 161; Knapp v. Hanley, 108 Mo. App. 360. (3) Defendant's objection to the instructions on the measure of damages, has been completely put at rest by the following decisions of the Supreme Court of Missouri. Wheeler v. Bowles, 163 Mo. 410; Browning v. Railroad, 124 Mo. 72; Fearey v. O'Neill, 149 Mo. 477; Harmon v. Donahue, 153 Mo. 275; Smith v. Fordyce, 190 Mo. 32; Partello v. Railroad, 217 Mo. 658. (4) The law is well settled in this State that the jury must find separately on the counterclaim. The fact that the verdicts on defendant's counterclaim and on plaintiff's cause of action were on separate pieces of paper does not affect any substantial right of defendant. Only one judgment was rendered. R. S. 1899, sec. 659; Nowell v. Mode, 132 Mo. App. 243; Marshall v. Armstrong, 105 Mo. App. 238; Henderson v. Davis, 74 Mo. App. 1; Hitchcock v. Baughan, 44 Mo. App. 42.

GRAY, J.—This is an action commenced in the circuit court of the city of St. Louis, wherein plaintiff claims that he employed defendant to treat him for eczema, and was injured by the alleged negligence of the defendant in applying X-rays to his hand. Defendant interposed several defenses, and on the trial, there was a verdict for plaintiff for $5583.33, from which defendant has appealed.

The suit had been previously brought for the same cause of action, and upon a jury trial, the court held,

at the conclusion of the evidence, that plaintiff was not entitled to recover, and the plaintiff took a nonsuit. In this action, the defendant, in addition to pleading to plaintiff's cause of action, set up a counterclaim, growing out of the first action, and alleging that the first action was actuated by malice and without probable cause. The court refused to submit the counterclaim to the jury.

The petition in the present case alleges that on the 10th day of August, 1901, the defendant was a physician and surgeon, engaged in the practice of his profession in the city of St. Louis; that on said day plaintiff employed defendant for a reasonable compensation to be paid him by plaintiff, to treat plaintiff's hand for eczema; that in treating plaintiff for said disease, defendant negligently, carelessly and unskillfully applied electric rays or currents to plaintiff's hand, and carelessly, negligently and unskillfully caused plaintiff's hand to be exposed to said rays or currents eight or nine times, for such a length of time as to cause the skin, muscles and contents of the palm of plaintiff's said hand to be severely and painfully burned; that by reason of the carelessness, negligence and unskillfulness of said defendant, plaintiff's said hand became badly swollen, poisoned and diseased, and seriously and permanently injured, to plaintiff's damage in the sum of $10,000.

It will be seen that the negligent acts complained of are that the defendant negligently, carelessly and unskillfully applied electric rays or currents to plaintiff's hand, and likewise caused the hand to be exposed to said rays or currents eight or nine times, and for such length of time as to cause the skin, muscles and contents of the hand to be severely burned.

The evidence shows that defendant was a physician and surgeon, and was practicing his profession in the city of St. Louis, from the time he graduated in 1897. The plaintiff was a machinist. At the time

plaintiff first went to see the defendant concerning his injury, he was twenty-eight years of age, and married. While working at his trade, he sustained a supposed scratch in the palm of his hand. Later a red spot, about the size of a half dollar, appeared in the center of the palm of his right hand. It is claimed by him that this spot did not pain nor inconvenience him in the performance of his work. On the 10th day of August, 1901, he went to the defendant's office to consult him about the spot in his hand, and he claims that defendant told him he had a chronic disease, known as dry tetter or eczema, and that he could cure it.

Plaintiff claims that he then and there employed defendant to treat his hand for the ailment, and that the defendant commenced to treat him by applying a salve to the spot in the hand, and that at the time plaintiff employed defendant to treat his hand, defendant persuaded him to join the St. Louis Hospital Ticket Association, which was a hospital conducted by defendant. The plaintiff testified that defendant told him the hospital did not treat persons for chronic diseases, and that he would give him the treatments. The plaintiff claims for more than a year the defendant treated him with certain applications, but no benefit was obtained therefrom; that in September, 1902, defendant told him he would have to use the X-rays on the hand, and that he would charge him one dollar a treatment therefor; that at the time arrangements were made for the X-ray treatment, he was told by the defendant that it would cure him, and that it would not interfere with his work; that the defendant did apply the treatment to his hand, and told him to hold the palm of his hand about half an inch from the energized tube from which the rays or currents emanated; that defendant exposed his hand to such rays or currents nine times in eleven days, each time directing him to hold his hand about half an inch from the said tube, and that these exposures varied from ten to thirty-five minutes. Plaintiff claims that

after the eighth treatment, he complained to the defendant that his hand was burning him and paining him, and afterwards, defendant gave him another treatment for ten minutes' duration.

Plaintiff further claims that on different occasions, defendant left him with his hand thus exposed, and went to attend to other business, and at certain times gave the plaintiff instructions when to turn off the current; that the hand became badly swollen, and that the defendant scraped the skin until he got nearly all the skin removed from the palm of the hand, and in addition thereto, that he scraped the hand for the purpose of removing the parts appeared to have been burned or cooked by the X-ray; that he suffered great pain from the time the X-ray treatments were applied; that he could not sleep nights, and the defendant gave him laudanum to quiet him, but his pains were such that notwithstanding he took twenty-five drops of laudanum, he got no relief; that these treatments of scraping and dressing the hand continued until the 10th day of February, 1903, when the treatments caused such pain and suffering that he could not stand it, and he then left the defendant and went to another physician, who commenced treating the hand, resulting finally, in relieving the pain and causing the hand to heal, but left it in such shape that he now has what the physicians call a "claw hand."

The plaintiff's hand was exhibited to the jury, and we gather from the testimony that the fingers cannot be straightened, and are left in such a position that the hand resembles a claw, and thereby the plaintiff is deprived of a material per cent of its usefulness.

The testimony on the part of the defendant tended to prove that the contract with plaintiff was not with the defendant, but was with the hospital association. It was the opinion of the trial court that that fact made no difference in the merits of the controversy.

A number of physicians and surgeons testified, and without setting forth their testimony, it may be said that there is really no contradiction therein. Their testimony all tends to prove that the X-ray in 1902, was a proper treatment for injuries such as plaintiff had. The testimony shows that the proper treatment was to place the hand at from six to twelve inches from the tube, and to leave it thus exposed for different periods of time to be determined from the result of the treatments.

We have read the testimony of all the physicians, including that of the defendant, and from that testimony, it must be said that if the defendant placed the plaintiff's hand as close to the tube as plaintiff claimed and left it thus exposed the number of times and for the length of time testified to by plaintiff, then defendant was guilty of negligence. And on the other hand, if the defendant treated the hand as his testimony tends to prove he did, then the treatment was proper and the defendant is not liable in this case.

The defendant and his witnesses testified that the hand was exposed the number of times claimed by plaintiff, but there was a protection placed over all parts of the hand except the spot to be treated, and that while the treatments varied from ten to thirty minutes the plaintiff's hand was placed not closer than six inches to the tube, and he was cautioned to keep it at that point. The witness thus agreeing that if the hand was treated as claimed by the plaintiff, the defendant was guilty of negligence, and if the hand was treated as claimed by the defendant, then he was not guilty of negligence, the issue was plainly and clearly one for the jury.

The defendant claims the petition alleges the contract was with him personally, and he offered to show the contract was with the association. The trial court held this was not material, although admitted much testimony relating thereto. If the plaintiff's suit is on

Hales v. Raines.

the contract of employment, then appellant's position is well taken. On the other hand, if the action is in tort, then we cannot see how the question can be material.

Mr. Cooley, in his work on Torts, page 90, declares: "In many cases, an action as for a tort, or an action as for a breach of contract may be brought by the same party on the same state of facts. The tort in such a case is connected with the contract only. as will enable the tortfeasor to bring the party wronged into it. There are in certain relations, duties imposed by law, a failure to perform which is regarded as a tort, though the relations themselves, may be formed by contract covering the same ground."

Appellant calls our attention to the case of Lane v. Boicourt, 27 N. E. 1111. That case was one by the husband for damages occasioned by the unskillful treatment of plaintiff's wife. The petition alleged that plaintiff employed defendant and promised him compensation, and loosely averred that defendant contracted to render the required services, and it is alleged that defendant failed to give plaintiff's wife the proper attention, and it was held that the action was on the contract. A reading of that case shows that the action was held to be on the contract because of the peculiar and unusual allegations in the petition.

In the present case, the petition is plainly one in tort, and not for breach of contract. [Armelio v. Whitman, 127 Mo. App. 698, 106 S. W. 1113.] The case being in tort, it can make no difference whether the defendant was employed by plaintiff to treat him, or whether the plaintiff's contract was with the hospital in which defendant was interested, and defendant was assigned by the hospital association to treat the plaintiff. The material fact alleged in the petition is, that the relation of physician and patient existed between the plaintiff and the defendant at the time of the alleged negligence of the defendant.

Hales v. Raines.

We gather from the authorities that the correct rule is, that a physician and surgeon when employed in his professional capacity is required to exercise that degree of knowledge and skill and care which physicians and surgeons practicing in similar localities ordinarily possess. In other words, a physician is held to that care and skill which was exercised generally by physicians of ordinary care and skill in his and similar communities. The physician is not chargeable with negligence for failure to use his best skill and ability if he uses the care and skill which is exercised generally by physicians of ordinary care and skill in similar communities. [West v. Martin, 31 Mo. 375; Robertson v. Wenger, 131 Mo. App. 224, 110 S. W. 663; Ghere v. Zey, 128 Mo. App. 362, 107 S. W. 418; Whitsell v. Hill, 37 L. R. A. and authorities there collected; Doras v. Warford, 9 L. R. A. N. S. 1090.]

The appellant alleges that the verdict is against the weight of the testimony, and so much as to indicate passion or prejudice in the verdict of the jury. It is true that so far as the testimony coming from the lips of the witness is concerned, the plaintiff's testimony stands alone on the material and only question of negligence, to-wit: The manner of applying the X-rays to the hand.

The defendant is corroborated by two other persons, and if the jury believed their testimony, the defendant is not liable. The plaintiff is corroborated, however, by some of the physical facts in the case. The expert testimony tends to show that if the hand had been treated with the X-ray as defendant claims it was, there was not much likelihood of it being burned as it was. This material fact undoubtedly had great weight with the jury, and it is not our province or right to pass upon the weight of the testimony wherein the successful party's case is supported by substantial evidence.

146 App.—16

On the measure of damages the court told the jury: "The court instructs the jury if you find for the plaintiff you should, in estimating his damages, consider his physical condition before and since receiving the injuries for which he sues, as shown by the evidence, the physical pain and mental anguish, if any, suffered by him and resulting from the injuries received; his loss of time, and such damages, if any, as you may, from the evidence, find it is reasonably certain he will suffer in the future therefrom, and you will find a verdict for such sum as in your judgment will, under the evidence, really compensate him for such injuries, including compensation for such reasonable amounts, if any, as the evidence shows he has expended for medicine and medical treatment."

The appellant contends that this instruction authorized the jury to find damages for loss of time which plaintiff might suffer in the future, and the claim is based upon the following language: "His loss of time and such damages, if any, as you may, from the evidence, find it is reasonably certain he will suffer in the future therefrom." A fair construction of the above language, with the previous part of the instruction, shows that the word "therefrom," does not refer to the words "loss of time," but refers to damages he will suffer in the future as a result of the injury.

The evidence shows that plaintiff's injury is permanent, and therefore, the court properly submitted the question of future damages to the jury.

Plaintiff's general instruction closes with the following words: "Then you will find for the plaintiff in a sum not to exceed ten thousand dollars," and appellant insists that this instruction gave the jury a "roving commission," and the giving of it was error as declared by the Supreme Court in the cases of Sherwood v. Railway, 132 Mo. 345, 33 S. W. 774, and Badgley v. City, 149 Mo. 134, 50 S. W. 817.

The instruction must be read with the instruction above copied, and by reading the two, it is readily seen that plaintiff's recovery is limited to the damages sustained from the injury, and is authorized by the law as declared in Lange v. Railroad, 208 Mo. 1. c. 479, 106 S. W. 660; Waddell v. Railroad, 213 Mo. 18, 111 S. W. 542.

If appellant was of the opinion that the jury needed more specific instructions, it was his duty to have requested the court to give the same. [Thompson v. City of Independence, 131 Mo. App. 375, 111 S. W. 521.] We dismiss this part of the controversy by calling attention to the fact that the instruction complained of is a copy of the instruction found in Curtis v. McNair, 173 Mo. 1. c. 290, 73 S. W. 167, and the construction placed by us upon the instruction is authorized by the opinion in that case.

We are next asked to reverse the judgment because the jury returned two verdicts. We fail to see any force in this contention. The cause of action in plaintiff's petition was submitted to the jury, and at the same time the court gave an instruction to the jury to find the issues for the plaintiff on defendant's counterclaim. The jury in returning its verdict, had the foreman sign in two places, once under that part of the verdict finding for the plaintiff, and again under that part of the verdict, finding the issues in favor of plaintiff on defendant's counterclaim. The fact that the foreman signed the verdict twice instead of once, cannot be held to be error authorizing appellate court to set aside the judgment of the trial court.

The defendant asked several instructions on his counterclaim all of which were refused by the court. It is unnecessary to discuss these refused instructions, as the court gave an instruction on its own motion that defendant was not entitled to recover on his counterclaim. We are unable to see how the defendant was injured by the refusal of the court to submit his coun-

terclaim to the jury. If the jury had found the issues for the defendant on plaintiff's case, then a different question would be presented, but the jury, after hearing all the evidence, returned a verdict for the plaintiff for more than five thousand dollars, and on the theory that the defendant had carelessly and unskillfully treated the plaintiff's injured hand. On the last trial the plaintiff was suing for the identical injuries alleged in his first petition, to-wit: The damage to the palm of his hand caused by the carelessness and unskillfulness of the defendant. When the jury found that the injuries to plaintiff's hand were due to the negligence of the defendant, it seems to us that such finding necessarily settled the question of malicious prosecution in the first suit. How could the jury in this last case have found a verdict for the plaintiff, and in addition thereto return a verdict for the defendant based upon the theory that the plaintiff's cause of action for his injuries was not commenced in good faith and was maliciously prosecuted?

The court also refused to submit the question of plaintiff's contributory negligence to the jury, and complaint is made of such action. If there is any evidence in the case showing that plaintiff was guilty of contributory negligence, we have been unable to discover it, and the learned counsel for appellant have failed to call our attention to any such evidence in their brief. The abstract of the evidence in this case consists of more than two hundred pages of typewritten matter, and we have looked through it carefully in an effort to find evidence upon this issue, and we have been unable to do so.

The instructions relating to the degree of care exercised and skill possessed by the defendant, are challenged. In behalf of the plaintiff the court told the jury: "The court instructs the jury that one who holds himself out to the public as a physician and surgeon, the law implies a promise and duty on his part that he will use reasonable skill and diligence in the treatment

of those who employ him." And on behalf of the defendant, the following: "The court instructs the jury that the defendant was not bound to exercise extraordinary diligence or care in treating the plaintiff, but only reasonable care. Defendant is not responsible for errors of judgment or for mistake in matters of doubt or uncertainty in the treatment of plaintiff, if you find from the evidence that defendant in the treatment of plaintiff exercised and used such reasonable or ordinary care as would ordinarily be exercised and used by a physician or surgeon of average skill and knowledge in this city in treating the ailment for which plaintiff was treated by defendant, at the time when the services of defendant were rendered to the plaintiff, as shown by the evidence, and if you believe from the evidence that defendant used such reasonable care in treatment of plaintiff then you should find your verdict for defendant on the plaintiff's alleged cause of action."

Giving due regard to the well-known rule that instructions must all be read together, the instructions correctly declare the law relating to the care and skill required and possessed by physicians.

Appellant challenges the sufficiency of the petition in the following language: "The petition does not aver that plaintiff omitted to use such care as would ordinarily be exercised and used by a physician and surgeon of average skill and knowledge in this city." We have been cited to no authority requiring such an allegation in the petition, and we are very certain that inasmuch as the petition in this case was not attacked by demurrer, that it is sufficient as against the complaint now lodged against it. [Haggerty v. Railroad, 100 Mo. App. l. c. 439, 74 S. W. 456.]

It is not claimed by the appellant that when plaintiff accepted his services to treat the ailment in his hand, that at said time he discovered anything of a serious nature or likely to cripple the plaintiff for life. He treated the plaintiff for more than a year, and by

that time must have been thoroughly acquainted with the injured hand. The testimony all shows that applying the X-rays in the manner defendant claims he applied the same, was not likely to result seriously, but if the defendant applied the same in the manner and to the extent claimed by plaintiff, then the hand was likely to be burned, as it was, and the injury complained of would be the natural result therefrom.

The jury believed the plaintiff and found by their verdict that the defendant treated the plaintiff's hand in a manner practically conceded by the evidence to be negligent and unskillful, and as that verdict is supported by substantial evidence, it is our duty to accept the same and permit the judgment to go accordingly. The judgment will be affirmed. All concur.